IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ERIC WHITAKER,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civil Action No. RDB-20-3171** |
| **MARYLAND TRANSIT,** | * | |
| **ADMINISTRATION,** *et al.,* | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On October 31, 2020 Plaintiff Eric Whitaker ("Whitaker" or "Plaintiff") filed this suit against Defendants Maryland Transit Administration ("MTA"), Kevin B. Quinn, Jr. ("Quinn"), Richard T. Simmons ("Simmons"), Robert "Chuck" Gilman ("Gilman"), Richard Stelmack ("Stelmack"), Keith Stewart ("Stewart"), and Eric Bowser ("Bowser") (collectively "Defendants"). (ECF No. 1.) Whitaker's Complaint alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*Id.*) Whitaker instituted this action against Quinn, Gilman, and Stelmack individually, as well as in in their official capacities as employees of MTA. (*Id.*) His claims against Simmons, Stewart, and Bowser are against the Defendants solely in their official capacities as MTA employees. (*Id.*) This action is the second such case filed by Whitaker in this Court raising almost identical issues to those previously addressed by two Judges of this Court.

On January 15, 2021, the Defendants filed the presently pending Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 10).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, the Defendants' Motion, construed as a Motion to Dismiss, is GRANTED and this suit shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in the Plaintiff's Complaint (ECF No. 1). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Plaintiff Whitaker is a 61-year-old, African American male and resident of Maryland and employee of Defendant Maryland Transit Administration ("MTA").  (ECF No. 1 ¶¶ 3-4, 19.)  Whitaker is a member of the Amalgamated Transit Union, Local 1300 ("Union"), which has entered into a collective bargaining agreement with MTA.  (*Id.* ¶ 30.)  Defendant Quinn is the Administrator of MTA. (*Id.* ¶ 7.)  Defendants Simmons, Gilman, Stelmack, Stewart, and Bowser are current and former members of MTA Management.  (*Id.* ¶¶ 8-12.)

Whitaker began working for MTA in April of 1989 as a bus mechanic.  (*Id.* ¶ 19.)  In September 2001, he moved to the position of "A" Repairman Electro-Mechanic and held that position on the date of his filing of the Complaint in this case on October 31, 2020.  (*Id.* ¶ 20.) From September 2001 to October 27, 2014, he worked in the Bus Facilities Maintenance Department.  (*Id.* ¶ 28.)  According to Plaintiff, in 2001 there were two "'A' Repairman Electro-Mechanic" positions open in the Bus Facilities Maintenance Department, and he "submitted a bid" for the position in September 2001.  (*Id.* ¶ 34.)  Whitaker alleges that he was the most senior and qualified MTA applicant and that the collective bargaining agreement

requires the MTA to fill vacant positions with the most senior, qualified employee applicant. (*Id.* ¶ 26.)  Nevertheless, both positions were filled by Caucasian applicants with less seniority. (*Id.* ¶ 37.)  At an unspecified date, Whitaker filed a grievance with the Union and was thereafter awarded one of the vacant "'A' Repairman Electro-Mechanic" positions in the Bus Facilities Maintenance Department.  (*Id.* ¶ 38.)

Defendant Stelmack became Whitaker's supervisor in 2001, when he began working as an "A" Repairman Electro-Mechanic in the Bus Facilities Maintenance Department.  (*Id.* ¶ 38.)  Stelmack allegedly told Whitaker that he "would assign Plaintiff the nastiest and dirtiest jobs to break his spirit . . . ." (*Id.* ¶ 43.)  Whitaker alleges that for two years Stelmack harassed him.  (*Id.* ¶ 45.)

At an unspecified date, a "few years" after Whitaker became an "'A' Repairman Electro-Mechanic" in 2001, he applied for a vacant HVAC Technician position in the Metro Facilities Maintenance Department. (*Id.* ¶ 46.)  Gilman was the "Facilities Maintenance manager" at that time.  (*Id.*)  Whitaker alleges that Gilman told him that he "would do everything in his power to keep him from getting the HVAC technician position."  (*Id.* at 47.)  Whitaker claims that despite his following the proper protocol to apply for the HVAC position, including taking a required test, he was never awarded the position.  (*Id.* ¶¶ 47-50.)  Gilman had allegedly made it clear that he was training his Caucasian son for the position, and Whitaker claims that Gilman rescinded and reposted the HVAC vacancy in his department in order to alter the qualifications beyond that which he possessed, rendering him ineligible to apply while helping his son obtain the required qualifications.  (*Id.* ¶¶ 49-52.)

Whitaker makes several other allegations including that he was asked to drive a service vehicle which failed to meet Maryland safety standards (*id.* ¶ 57); that while his Caucasian coworkers were all permitted to have window coverings in their offices, he was not (*id.* ¶ 60); and that he was denied requests for vacation while his Caucasian coworkers were not (*id.* ¶ 67). Whitaker further alleges that while he was working for Stelmack's department, he was omitted from a list of employees recommended to receive welding training. (*Id.* ¶ 55.) He asserts that such list included only Caucasian "A" Repairman Electro-Mechanics. (*Id.* ¶ 56.) In June 2012, Whitaker filed a charge of discrimination against MTA with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC") in which he allegedly complained of racial discrimination and retaliation due to management harassment, denial of training opportunities, and wrongful suspensions. (*Id.* ¶ 66.) An arbitration settlement agreement dated January 10, 2013 stated that Whitaker was entitled to receive welding training. (*Id.* ¶ 70.) That settlement agreement, attached by Whitaker to the complaint filed in an earlier suit in this Court, included a provision stating that by signing the agreement Whitaker was waiving his right "to sue or prosecute further charges against [MTA] with respect to any matters which where or might have been alleged as charged filed with the Commission in the instant case." *See Whitaker v. Maryland Transit Administration*, No. ELH-17-00584, 2018 WL 902169, at *6 (D. Md. Feb. 14, 2018) (ECF No. 1-6.)

On November 11, 2013, Whitaker did complete a welding course, entitling him to "skilled trades pay" as of that date. (*Id.* ¶ 72.) He acknowledges that he did in fact receive such increased rate of $28.55 per hour from November 11, 2013 to October 27, 2014, when he was transferred to the Metro Facilities Maintenance Department. (*Id.* ¶ 73.) The

administrative document noting the transfer provided that Whitaker's pay upon transfer would be $27.63 per hour, the "unskilled" rate for "A" Repairman Electro-Mechanics.  (*Id.* ¶ 78.) This form was updated on November 25, 2014 to show Whitaker's position as an "'A' Repairman-Welder Skld" and his entitlement to the skilled trades pay rate of $28.55.  (*Id.* ¶ 82.)  Prior to the correction, Whitaker claims that he was the only individual in the Metro Facilities Maintenance Department who did not receive the skilled trades pay, despite being the only individual who had completed the welding course.  (*Id.* ¶¶ 84-85.)

Nevertheless, on December 8, 2014, the Plaintiff filed another grievance against the MTA based on its refusal to pay him skilled trades pay despite his welder certification, and on February 5, 2015, the MTA Manager of Administration found that Whitaker did qualify as an "A-Repairman with welding skills," and was therefore entitled to back pay for the period of time that he worked in the Metro Facilities Maintenance Department.  (*Id.* ¶¶ 87-88.)  Whitaker received a check for back pay, at the skilled trades pay rate, for the hours he worked between the date of his welding certification through March 2015.  (*Id.* ¶ 90.)

However, on January 19, 2016 Whitaker filed another Charge of Discrimination with the EEOC against the Defendant MTA.  *Whitaker*, No. ELH-17-00584, 2018 WL 902169, at *6.  In the 2016 Charge, Whitaker alleged that the MTA decreased his pay from $28.55 an hour to $27.63 an hour in retaliation for a "race and retaliation discrimination charge" that he filed in 2012.  *Id.*  On November 30, 2016, the EEOC issued a Dismissal and Notice of Rights to him.  *Id.* at *7.  Following that right to sue notice, after the denial of his claim by the Commission, on February 28, 2017 Whitaker filed suit in this Court against MTA, Paul Comfort, as well as Defendants in this case, Simmons, Stelmack, Stewart, and Browser,

individually and in their official capacities. *Id.*   This first action in this Court alleged five counts against all defendants: Count One asserted a claim of race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; Count Two asserted claims of retaliation under Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; Count Three alleged hostile work environment in violation of Title VII, the ADEA, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*; Count Four alleged violation of the "Equal Pay Act" without any citation to a federal or Maryland statute; and Count Five asserted a claim under Maryland law for intentional infliction of emotional distress. *See Whitaker*, No. ELH-17-00584, 2018 WL 902169, at *1.

On February 14, 2018, Judge Hollander of this Court dismissed all of Whitaker's claims against the defendants to that first action, except for his Title VII retaliation claim against MTA and MTA officials in their official capacities. *Id.* at *2.  Judge Hollander held that all of the Plaintiff's claims under the ADEA were barred by sovereign immunity; he could not proceed against the individually named defendants in their individual capacities; he had failed to state a claim for relief with respect to his claims for intentional infliction of emotional distress and hostile work environment under the Rehabilitation Act; and he had abandoned his claim for violation of the "Equal Pay Act." *Id.*   Judge Hollander also held that Whitaker's Title VII claims for race discrimination and hostile work environment were subject to dismissal for failure to exhaust administrative remedies.  Specifically, Judge Hollander held that because the Plaintiff had failed to check the "race discrimination" and the "hostile work environment" boxes on the 2016 Charge, the Court could not read such claims into such charge. *Id.* at * 20-*22.  The action continued with respect to the Plaintiff's Title VII retaliation

claim against MTA and Paul Comfort, Simmons, and Bowser in their official capacities.  On December 7, 2018, Magistrate Judge Copperthite of this Court granted summary judgment in favor of the defendants, holding that there was insufficient evidence from which a jury could find in the Plaintiff's favor on the retaliation claim.  *See Whitaker v. Maryland Transit Administration*, No. ADC-17-0584, 2018 WL 6435905 (D. Md. Dec. 7, 2018).

Nevertheless, despite these earlier rulings by this Court, on October 31, 2020, Plaintiff Whitaker filed this second civil action against MTA and Defendants Quinn, Simmons, Gilman, Stelmack, Steward, and Bowser alleging racial discrimination in violation of Title VII.  (ECF No. 1.)  The Plaintiff's allegations in the Complaint in this suit mirror those of his complaints in his first suit but with some slight additions.  In this second action, Whitaker alleges that in December 2016, he obtained a "Leadman" position when his Caucasian co-worker, Davis, failed to perform Leadman duties and quit.  (ECF No. 1 ¶¶ 93-94.)  Whitaker claims that despite holding the Leadman position and performing its duties, he was never compensated with the additional Leadman pay of an additional 40 cents per hour.  (*Id.* ¶¶ 96, 98-99.)  He claims that such pay adjustments were properly made for his Caucasian co-workers.  (*Id.* ¶ 100.)  Whitaker also now asserts that following the hearing officer's decision regarding his entitlement to skilled trade pay in 2015, his hourly rate of pay was still not adjusted to match the skilled trades pay as it was for his Caucasian co-workers.  (*Id.* ¶ 91.)  He alleges that his coworkers' hourly rates were adjusted in June 2016, while in contrast his skilled trades were not reflected in his pay until approximately August 2018.  (*Id.* ¶ 92.)  Finally, Whitaker alleges that while he was properly awarded a second Leadman position in May 2018, he should have held such position until the next "Annual Pick" in January 2019.  (*Id.* ¶¶ 101-02.)  He alleges

that nevertheless he was removed from his position prior to that Annual Pick in August 2018. (*Id.* ¶ 103.)   According to Whitaker, his Caucasian coworkers have never been prematurely removed from positions such as Leadman.  (*Id.* ¶ 105.)

Whitaker's second suit follows his filing of a second EEOC Charge in March 2018, which was rejected by the EEOC.  On the 2018 Charge, Whitaker checked the boxes for both race discrimination as well as retaliation.  (*See* ECF No. 1-1.)  The 2018 Charge states the following:

> I. I began my employment with [MTA] in 1989, as a Repair Diesel Mechanic. In 2016, I filed an EEOC complaint (531-2016-00658).  Since then my white counterparts have received retroactive pay however, I have not.  In 2017, I filed an internal complaint of harassment.  Shortly thereafter, I was demoted from the position as "lead man," resulting in additional lost wages.
>
> II. Respondent has no reasonable explanation for its actions.
>
> III. I believe I was discriminated against with respect to wages and retaliatory demotion for engaging in protected activity due to my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)  The Charge listed the dates of discrimination as January 19, 2016 to March 7, 2018.  (*Id.*) On July 28, 2020, the EEOC issued a letter terminating the processing of the 2018 Charge and issued a right-to-sue letter.  (ECF No. 1-2.)  On October 31, 2020, this second action was filed by Whitaker.  (ECF No. 1.)

On January 15, 2021, the Defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment.  (ECF No. 10.)

### STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document

was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, in ruling on Defendant's Motion to Dismiss, this Court will consider Plaintiff's EEOC Charge (Ex. 2, ECF No. 6-4). *See Bowie v. Univ. of Maryland Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.") (citations omitted).

## ANALYSIS

### I.    Res Judicata

In their Motion to Dismiss the Defendants argue that the Plaintiff's claim for racial discrimination under Title VII realleges claims that have previously been adjudicated in Whitaker's prior lawsuit, *Whitaker v. Maryland Transit Administration*, No. ELH-17-00584, 2018 WL 902169 (D. Md. Feb. 14, 2008) and, therefore, that this suit is now barred by the doctrine of *res judicata*. (ECF No. 10-1 at 1.) In Maryland, *res judicata* "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345,

355 (4th Cir. 2004)).  This doctrine of *res judicata* serves "to promote judicial efficiency and foster reliance on adjudications by putting an end to a cause of action once litigated."  *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991); *see also Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (*res judicata* is "judicial in origin").  The doctrine of *res judicata*, or claim preclusion, applies if there is: "'(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties of their privies in the two suits.'"  *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (quoting *Pueschel*, 369 F.3d at 354-55).

As the Plaintiff concedes, this case involves the same parties as the Plaintiff's earlier action in *Whitaker*, No. ELH-17-00584, 2018 WL 902169, and "arises from the same transaction or series of transactions" as those addressed in the Plaintiff's previous complaint." (ECF No. 11-1 at 7.)  However, Judge Hollander's dismissal of the Plaintiff's claims for lack of exhaustion was not a "final judgment on the merits."  As the Supreme Court explained in *Costello v. United States*, "[a]t common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim." 365 U.S. 265, 285 (1961).  In that case, the Court held that the dismissal of a prior denaturalization proceeding due to the government's failure to file an affidavit of good cause constituted a dismissal "for lack of jurisdiction" under Federal Rule of Civil Procedure 41(b), and thus did not operate as adjudication on the merits.  *Id.* at 284-88.  Consistent with *Costello*, the U.S. Court of Appeals for the First Circuit in *Lebron-Rios v. U.S. Marshal Service*, held that dismissal of a plaintiff's Title VII claims by the district court should have been without prejudice to any civil action filed after proper exhaustion of administrative remedies. 341 F.3d 7, 14 (1st Cir. 2003).  "[I]n the

11

ordinary case, a dismissal for failure to exhaust administrative remedies does not constitute an adjudication on the merits because it "is not a determination of the claim, but rather a refusal to hear it, and the plaintiff may thereafter pursue it in an appropriate forum or when the preconditions are met." *Barnett v. U.S. Attorney General*, No. 1:11CV203, 2013 WL 1164355, at *3 (N.D.W. Va. Mar. 20, 2013) (internal quotations and citations omitted).  Judge Hollander's dismissal of the Plaintiff's previous claim for racial discrimination under Title VII due to his failure to exhaust administrative remedies does not completely bar Whitaker from bringing a new suit claiming racial discrimination.  However, the doctrine of *res judicata* does remain applicable to certain portions of the Plaintiff's claims in this case.  In that regard, *res judicata* bars the Plaintiff's claims in two ways.

First, in the previous action, Judge Hollander clearly held that the Plaintiff's Title VII claims as brought against the individually named defendants in their individual capacities were improper under clear precedent of the U.S. Court of Appeals for the Fourth Circuit.  *Whitaker*, No. ELH-17-00584, 2018 WL 902169, at *13.  As Judge Hollander stated, "the Fourth Circuit has 'expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers' in their own right.'" *Id.* (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (quoting 42 U.S.C. § 2000e(b)).  Judge Hollander accordingly dismissed the Title VII claims brought by Whitaker against the defendants individually, and such dismissal certainly constitutes a final decision on the merits.  *Res judicata* bars Whitaker from once against seeking to recover under Title VII against MTA officials individually. Accordingly, his claims against Quinn, Gilmer, and Stelmack in their individual capacities are barred as a matter of law and must be dismissed with prejudice.

Second, as the Plaintiff concedes, this Court did reach a final judgment on the merits on one charge in the Plaintiff's first complaint. Whitaker's claim for retaliation under Title VII went forward for adjudication, as Whitaker had properly exhausted his remedies with respect to that claim. Whitaker's retaliation claim stemmed from the decrease in his hourly pay rate that occurred when he transferred to an "A" Repairman Electro-Mechanic position in the Metro Facilities Maintenance Department in October 2014. *Whitaker v. Maryland Transit Administration*, No. ADC-17-0584, 2018 WL 6435905, at *1 (D. Md. Dec. 7, 2018). Magistrate Judge Copperthite entered summary judgment in favor of the Defendants on this remaining claim, holding that there was insufficient evidence from which a jury could find in the Plaintiff's favor. *Id.*

Specifically, Judge Copperthite found that the evidence demonstrated that Plaintiff's pay decrease was a result of a voluntary transfer from the "A" Repairman-Welder position to an "A" Repairman-Electro-Mechanic position that did not have welding duties. *Id.* at *6. His opinion provides that in the fall of 2014, the Plaintiff expressed interest in an "A" Repairman-Electro-Mechanic position in the Metro Facilities Maintenance Office and was transferred to the position. *Id.* at *3. As Whitaker re-alleges in his Complaint in this case, the administrative form documenting the transfer stated that he would receive a decrease in pay, which he then challenged with the filing of a grievance in December 2014. *Id.* As Whitaker also alleges, the hearing officer found that he was entitled to the "skilled trades" pay after his transfer and an "A" Repairman-Welder classification, and he accordingly received backpay for his work from his transfer through March 2015. *Id.* However, the hearing officer also held that MTA could elect not to have certified welders in the Metro Facilities Maintenance Department where there

is no welding work and, if it chose to do so, could eliminate the "skilled trades" pay in that department. *Id.* Thereafter, MTA officials reviewed the need for welders and determined that, because there was no welding work to be performed, the "A" Repairman-Welder classification would be discontinued, and the Plaintiff, as well as three others were reclassified as "A" Repairman-Electro-Mechanics. *Id.* In March 2015, Whitaker's Union filed a grievance on behalf of all the employees who lost the "skilled trades" pay upon reclassification. *Id.* In September 2017, the Union and MTA reached an agreement which resulted in Whitaker receiving payment for all lost wages due to his transfer and a commitment to pay him at the "skilled trades" rate. *Id.*; *see also* (ECF No. 10-6).

In light of these facts, Judge Copperthite held that Whitaker had failed to put forth sufficient direct and indirect evidence upon which a reasonable jury could find retaliation, and that he had also failed to show a causal connection between his filing of a grievance in 2012 and the pay decrease in 2014 as required to establish a *prima facie* case of discrimination. *Id.* at *6. Additionally, Judge Copperthite held that even if Whitaker could establish causation as required to state a *prima facie* case, his claim would fail under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at *6. Under *McDonnell Douglas* and its progeny, if an employee is able to establish a *prima facie* case of intentional discrimination or retaliation under Title VII, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 142, 142 (2000) (citing *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *see also Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (applying *McDonnell Douglas* burden shifting framework to a plaintiff's

claim for retaliation under Title VII).  Judge Copperthite held that the defendants to the prior suit "easily carr[ied]" that burden "because they produced evidence showing that Plaintiff's pay decrease resulted from a lack of welding work available in the Metro Maintenance Facilities Office, which prompted management's decision to discontinue the welding classification and the 'skilled trades' pay."  *Whitaker*, No. ADC-17-0584, 2018 WL 6435905, at \*7.

In the present suit, Plaintiff Whitaker again seeks legal redress related to his entitlement to "skilled trade" pay, claiming that the decision not to award him skilled trades pay was discriminatory, as his white counterparts have received retroactive pay while he has not.  (*See* 2018 Charge, ECF No. 1-1; Complaint, ECF No. 1 ¶¶ 91-92, 100.)  Judge Copperthite's decision on the merits bars the repetition of such claims in this case.  As provided above, the second element of *res judicata* requires "an identity of the cause of action in both the earlier and the later suit."  *SAS Institute*, 874 F.3d at 378.  To meet this element, a plaintiff need not have presented the same legal theory in the earlier suit.  *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009).  Rather, the inquiry is whether the second suit "'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Id.* (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)).  As the Plaintiff concedes, this is true in the case at hand.  (ECF No. 11-1 at 7.)  To prevail on a claim of racial discrimination on the basis of his entitlement to retroactive "skilled trades" pay, Whitaker would once again have to prove a *prima facie* case of discrimination, and the Defendants would once again have the burden to show a legitimate, nondiscriminatory reason for the payment decisions.

Judge Copperthite's opinion clearly held that the Defendants could carry that burden in the context of a claim for retaliation, and his holding on that matter bars the Plaintiff's new claim for racial discrimination on the basis of the same "transaction or series of a transactions." Whitaker's entitlement to skilled trade pay was based entirely on his welding certification, and the pay decrease he suffered was due to a legitimate and nondiscriminatory decision by MTA to eliminate the "A" Repairman-Welder classification within the Metro Facilities Maintenance Department because there was no welding work to be performed. *Whitaker*, No. ADC-17-0584, 2018 WL 6435905, at *3. MTA's decision applied to all individuals with the "A" Repairman-Welder classification, not just the Plaintiff. *Id.* at *3. The Fourth Circuit has emphasized that *res judicata* is a "practical" doctrine and "is ultimately governed by whether the present case has already been decided, and whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Institute*, 847 F.3d at 378. Plaintiff Whitaker had the opportunity to show a discriminatory basis for changes in his pay in his previous civil action, and upon review of the pleadings and all "competent and admissible evidence submitted by the parties," Judge Copperthite found that he was unable to do so. *Res judicata* bars the Plaintiff's claims related to 2014 pay decrease and entitlement to retroactive pay in this case.

## II.    Exhaustion

The remainder of the Plaintiff's Whitaker's claims in this case include all of the allegations from his previous suit, namely (1) a requested job transfer in 2001 (ECF No. 1 ¶¶ 34-45); (2) a requested transfer to an HVAC position sometime after 2001 (*id.* ¶¶ 46-54); (3) a claim that he was not given the opportunity to receive welding training (*id.* ¶¶ 55-56); (4) the

plaintiff's refusal to drive a vehicle after being ordered to do so by management (*id.* ¶¶ 57-59); and (5) management's directive for him to uncover a window on the door of his office (*id.* ¶¶ 60-65). The Plaintiff also alleges in this suit that he, unlike his Caucasian counterparts, was not compensated for his service as Leadman in 2016 and was prematurely removed from a Leadman position in 2018. (*Id.* ¶¶ 98-108.) These claims are outside the scope of Whitaker 2018 EEOC Charge. Whitaker has therefore once again failed to exhaust his administrative remedies.

To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To exhaust, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, Maryland is a deferral state,[1] therefore, a claim must instead be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, No. RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *see also Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment

---

[1] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state due to the Maryland Commission on Human Relations, a state agency that is capable of providing relief from discrimination.

practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e-5(f)(1). On the other hand, where the EEOC concludes there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e-5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g.*, *Laber v. Harvery*, 438 F.3d 404, 416 (4th Cir. 2006).

The Supreme Court recently held that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Although a defendant may waive arguments related to administrative exhaustion, if the defendant asserts objections in a timely fashion such arguments may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, No. RDB-18-334, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

When a plaintiff brings suit in federal court following the issuance of a right-to-sue letter, the plaintiff's complaint must meet certain requirements. For example, when a plaintiff brings a charge with the EEOC, that charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement ensures that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court. *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005). In a subsequent suit, plaintiffs may only advance those claims which are "reasonably

related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Mindful that complainants typically advance EEOC charges without the assistance of counsel, courts afford their scope a liberal construction. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). Nevertheless, courts may not permit plaintiffs to assert one type of discrimination in an EEOC charge and later pursue other types of discrimination in formal litigation. *Id.*

> As detailed above, Whitaker's 2018 Charge stated the following:
>
> I. I began my employment with [MTA] in 1989, as a Repair Diesel Mechanic. In 2016, I filed an EEOC complaint (531-2016-00658). Since then my white counterparts have received retroactive pay however, I have not. In 2017, I filed an internal complaint of harassment. Shortly thereafter, I was demoted from the position as "lead man," resulting in additional lost wages.
>
> II. Respondent has no reasonable explanation for its actions.
>
> III. I believe I was discriminated against with respect to wages and retaliatory demotion for engaging in protected activity due to my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*) The Charge listed the dates of discrimination as January 19, 2016 to March 7, 2018. (*Id.*) As provided above, the Plaintiff's claims based on his entitlement to retroactive pay are barred by the doctrine of *res judicata*. The Plaintiff's remaining claims in this Charge is that he was demoted from the position as "lead man," seemingly in retaliation for his filing of an internal complaint for harassment.[2] Yet, the Plaintiff's Complaint in this case includes numerous other allegations including all those repeated from his previous suit (i.e., a requested job transfer in

---

[2] The Plaintiff no longer seems to be asserting that such a removal occurred, as his Complaint makes no reference to a removal from a Leadman position following the filing of a harassment complaint in 2017.

2001, a claim he was not given the opportunity to receive welding training, etc.), as well as claims that he, unlike his Caucasian counterparts, was not compensated for his service as Leadman in 2016 and was prematurely removed from a Leadman position in 2018.  (*See* ECF No. 1.)

The bulk of the Plaintiff's allegations are related to events which occurred well before January 19, 2016, the date on which the Plaintiff suggests the discriminatory conduct began and those allegations related to underpayment in 2016 and removal 2018, are not found in the 2018 Charge.  Although plaintiffs may advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation," *Smith*, 202 F.3d at 247, this Court cannot read the Plaintiff's numerous claims into his 2018 Charge.  First, with respect to the claims reasserted from his previous suit, it cannot be said that such claims followed "from a reasonable administrative investigation" of his claims based on retroactive pay and removal from a Leadman position in 2017.  The Plaintiff was already aware of all the facts re-alleged and could have included such claims in his 2018 EEOC Charge.  Moreover, as provided above, in a deferral state such as Maryland, a charge of discrimination must be be filed no more than 300 days after the alleged unlawful employment practice.  *See Garnes*, 2018 WL 276425, at *4 n.8.  Even if Whitaker had included all the re-alleged claims in his 2018 Charge, all such claims would relate to conduct which occurred well outside that 300-day deadline.  Further, some of the claims are barred by Whitaker's 2013 arbitration settlement with the MTA.  *See Whitaker v. Maryland Transit Administration*, No. ELH-17-00584, 2018 WL 902169, at *6 (D. Md. Feb. 14, 2018) (ECF No.

1-6.)  Whitaker did not, and at this point, cannot file a charge related to conduct which occurred between 2001 and 2016.

With respect to the remaining two claims regarding underpayment in 2017 and premature removal from a Leadman position in 2018, again this Court will not read such claims into the EEOC Charge.  Allegations that Whitaker was not compensated for his service as Leadman, unlike his Caucasian counterparts, is entirely separate from an allegation that he was removed from a Leadman position in 2017 following his filing of an internal complaint for harassment.  The exhaustion requirement under Title VII is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."  *Chacko*, 429 F.3d at 510.   Rather, the exhaustion requirement "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes."  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).  The requirement ensures that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court.  *Miles*, 429 F.3d at 492.  Accordingly, Courts look to the charges filed with the EEOC to determine if a claim was properly raised during the EEOC process, *Balas*, 711 F.3d at 408, and the EEOC charge frames the scope of the litigation, *Evans v. Tech.'s Applications & Servs. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).  The Defendants were simply not on notice of the Plaintiff's allegations that was he was not properly compensated for his work as Leadman in 2016.[3]

---

[3] Plaintiff alleges that he was not paid for Leadman duties performed in 2016 through 2017.  It has been more than 300 days since such alleged unlawful employment practice occurred.  As Whitaker has not filed an EEOC Charge on the basis of this alleged underpayment within the 300-day limit, the dismissal of this claim is with prejudice.  *See Vidal v. Doral Bank Corp.*, 363 F. Supp. 2d 19, 23 n.4 (D.P.R. 2005) (citing *Lebron-Rios*, 341 F.3d at 10 n.5.)

Similarly, the Defendants were not on notice of the Plaintiff's claim that he was improperly removed from a Leadman position in August 2018. Such event occurred after Whitaker's filing of his Charge in March of 2018. When Whitaker's premature removal from the Leadman position allegedly occurred, Whitaker could have amended his Charge to include such allegation. Under 29 C.F.R. § 1614.106(d) a plaintiff may amend his administrative complaint "at any time prior to the conclusion of the investigation to include issues or claims like or related to those claims in the complaint." Given that the EEOC did not issue the Plaintiff a right-to-sue letter until July 28, 2020, (ECF No. 1-2), Whitaker had plenty of time to amend his Charge to include allegations related to the August 2018 removal. The Plaintiff's allegations related to the 2018 removal are simply outside the scope of the relevant Charge.[4]

## CONCLUSION

For the reasons stated in the foregoing opinion, the Defendants' Motion to Dismiss (ECF No. 10) is GRANTED, and the Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.


A Separate Order follows.

Dated: March 23, 2021


_____/s/_____
Richard D. Bennett
United States District Judge

---

[4] Again, it has been more than 300 days since the alleged unlawful employment practice occurred. Whitaker cannot file a new EEOC Charge on the basis of this alleged discrimination, and, therefore, the dismissal of this claim is with prejudice. *See supra* note 3.